**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert L. BOYD, Defendant–Appellant.**

**No. 97–3228.**

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1998.

Decided June 11, 1998.

Keith C. Syfert, Scott A. Verseman (argued), Office of the United States Attorney, Rockford, IL, for Plaintiff–Appellee.

David J. Brown (argued), Rockford, IL, for Defendant–Appellant.

Before CUMMINGS, BAUER, and MANION, Circuit Judges.

499

BAUER, Circuit Judge.

Robert L. Boyd was charged, tried, and found guilty by a jury of: (1) conspiracy to deal in firearms without a license; (2) conspiracy to make false statements on United States Department of Treasury, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") forms; (3) engaging in the business of dealing firearms without a license; and (4) making false statements on ATF forms. Boyd appeals his sentence, arguing that Judge Reinhard incorrectly calculated his criminal history points by including a prior conviction for operation of an uninsured motor vehicle. We affirm.

## BACKGROUND

During 1995, federal law required that federally licensed firearms dealers have purchasers complete ATF Form 4473 for each firearm purchase. On each ATF Form 4473, the purchaser was required to certify that he or she is the "actual buyer" of the firearm. The form contained a warning that "straw purchases," or buying firearms on behalf of someone else, is illegal. Federally licensed firearms dealers were also required to call a state records division to run a criminal history check on the purchaser.

From July 1995 through January 19, 1996, Robert Boyd and his cousin, Paul Forrest, together purchased approximately 69 firearms for other individuals who could not legally possess firearms. Because Boyd was legally prohibited from possessing firearms by virtue of a 1992 conviction for robbery, Forrest completed all of the ATF forms for each firearm he and Boyd purchased. Several of the firearms purchased by Boyd and Forrest were later recovered in drug houses and in the possession of juveniles and convicted felons. Most disturbing, one juvenile accidentally shot and killed himself with one of the guns illegally purchased from Boyd and Forrest.

On October 22, 1996, a federal grand jury returned an eight count indictment against Boyd and Forrest. Count One charged both defendants with engaging in a conspiracy to deal in firearms without a license and making false statements on ATF Form 4473, in violation of 18 U.S.C. § 371.[1] Count Two charged both defendants with dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). Count Three charged that on December 2, 1995, Forrest made a false statement on ATF Form 4473 and that Boyd aided and abetted the making of this false statement, in violation of 18 U.S.C. §§ 2 and 924(a)(1)(A). The remaining five counts of the indictment charged Forrest with various related offenses and are not the subject of this appeal.

Forrest pleaded guilty to all eight counts of the indictment, and on April 16, 1997, a jury convicted Boyd of all three counts pending against him. Judge Philip G. Reinhard conducted a sentencing hearing on August 22, 1997. He held that Boyd's offense level was 30 and his criminal history level was IV, resulting in a sentencing range of 135 to 168 months imprisonment.

In calculating Boyd's criminal history category, the court agreed with the probation officer's presentence investigation report and assessed one criminal history point for Boyd's prior uninsured motor vehicle conviction. On August 25, 1995, Boyd was placed on court supervision for one year and fined $250 for the offense of Operation of an Uninsured Motor Vehicle in violation of 625 ILCS 5/3–707 of the Illinois Motor Vehicle Code. On February 20, 1996, the court supervision was vacated and a judgment of conviction was entered with a $500 fine and costs. United States Sentencing Guideline ("U.S.S.G.") § 4A1.2(c), which defines and instructs a court on computing a defendant's criminal history, does not list the offense of driving an uninsured motor vehicle. Judge Reinhard found that the offense of driving an uninsured motor vehicle is similar to the offense of driving without a license, or with a suspended or revoked license, which according to § 4A1.2(c) cannot be excluded from calculating the defendant's criminal history if

_____

1. Specifically, Forrest and Boyd were charged with making "straw purchases" of firearms for other individuals.

the sentence involved one year of probation. Boyd appeals.

## ANALYSIS

██ Boyd contends that the district court erred in counting his prior offense of operation of an uninsured motor vehicle in his criminal history. He alleges that operation of an uninsured motor vehicle is more similar to a petty traffic offense or a criminal misdemeanor and therefore should not be included in calculating his criminal history level.[2]

The sentencing guidelines require the district court to consider a defendant's record of past criminal conduct and to add one criminal history point for each prior sentence that is not otherwise counted in the guideline sections dealing with sentences of at least 60 days imprisonment. According to the introductory commentary of U.S.S.G. § 4, "[a] defendant's record of past criminal conduct is directly relevant to those purposes [of sentencing]. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment." U.S.S.G. § 4A, Introductory Commentary. Section 4A1.2(c) provides:

**(c) Sentences Counted and Excluded:**

Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows:

(1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:

Careless or reckless driving

. . .

Driving without a license or with a revoked or suspended license

. . .

(2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:

. . .

Minor traffic infractions (*e.g.*, speeding)

. . .

Section 4A1.2 does not list operation of an uninsured motor vehicle as one of the offenses which are to be counted or excluded in computing a defendant's criminal history. Therefore, under § 4A1.2(c), Boyd's prior conviction for operation of an uninsured motor vehicle is excluded if it is "similar to" any of the listed offenses in (c)(1), unless his sentence for the offense was equivalent to at least one year of probation. If Boyd's prior conviction is more "similar to" any of the offenses listed in (c)(2), his prior conviction is excluded regardless of his sentence.

██ We review the district court's interpretation of the scope of the guidelines *de novo* and its factual findings for clear error. *United States v. Roy*, 126 F.3d 953, 954 (7th Cir.1997). This Circuit has not adopted a formal analysis for determining whether a prior offense is "similar to" one of the enumerated exceptions. *Id.*; *United States v. Binford*, 108 F.3d 723, 727 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 2530, 138 L.Ed.2d 1029 (1997). Rather than focus on the elements of each offense or the possible range of punishment *in abstracto*, we look at the offense conduct and the actual penalty deemed appropriate by the sentencing court. *United States v. Booker*, 71 F.3d 685, 689 (7th Cir.1995).

A comparison of the offense of operation of an uninsured motor vehicle with the two motorist violations in §§ 4A1.2 (c)(1) and (c)(2) reveals that the uninsured motorist offense is more similar to driving without a license or with a revoked or suspended li-

---

**2.** The government contends that Boyd waived or, in the alternative, forfeited, his right to make this argument because he failed to properly object to Judge Reinhard's criminal history calculation during the sentencing hearing. However inart-

ful, counsel for Boyd did object to the judge's imposition of an additional criminal history point. *See* Tr. Vol. V at 90. This was sufficient to preserve the issue for appeal.

cense. The underlying behavior of both offenses involves an element of indifference to society. *See United States v. Hardeman,* 933 F.2d 278, 282 (5th Cir.1991) (finding that defendant's conviction for driving without insurance was similar to driving with a revoked or suspended license under § 4A1.2, but excluding the conviction because defendant's sentence of one day in jail was not equivalent to one year of probation). The license and insurance requirements are both prerequisites to driving, and both serve the same purpose: to control the number of high risk drivers on the highways. *See United States v. Dalton,* No. 94 CR 44, 1994 WL 529376 (N.D.Ill.1994). Operating an uninsured motor vehicle is more serious than committing a minor traffic offense; if an uninsured motorist causes a serious accident, it is possible that the victim will not be compensated for his or her injuries. Additionally, as the district court noted, minor traffic offenses are included in a different section of the Illinois Motor Vehicle Act than the uninsured motorist provision and the offense of driving with a revoked or suspended license.

 Having established that Boyd's prior conviction is similar to an offense listed in § 4A1.2(c)(1), it must be included in his criminal history calculation because the sentence was the equivalent to at least one year of probation. This Circuit has held that a one year period of court supervision is equivalent to a one year period of probation for purposes of § 4A1.2(c)(1). *Binford,* 108 F.3d at 727. In *United States v. Caputo,* we held that a sentence of conditional discharge is equivalent to a sentence of probation for purposes of U.S.S.G. § 4A1.2(c)(1). 978 F.2d 972, 977 (7th Cir.1992). We recently extended the *Caputo* holding to sentences of court supervision. Specifically, in *Binford* we stated:

> In *Caputo*, we observed that the only relevant distinction between sentences of formal probation and conditional discharge under the Illinois law is that in the former, the defendant is monitored by a probation officer, while in the latter, he is not. *Caputo,* 978 F.2d at 976. We concluded that, insofar as the purposes of the guidelines are concerned, that difference is irrelevant.

*Id.* at 977. There is likewise no relevant difference between conditional discharge and supervision. They both are conditional releases for which the sentencing court may impose appropriate restrictions or requirements. The only difference between conditional discharge and supervision is that the charges against a convicted defendant on supervision may ultimately be dismissed. This is of no consequence for purposes of § 4A1.2(c)(1).

*Binford,* 108 F.3d at 727–28. Therefore, Boyd's sentence was properly counted under § 4A1.2(c)(1).

### CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district court.