Commonwealth v. Gibbs.

---

COMMONWEALTH *v.* GIBBS.[1].

*Elections.*

Under the act of 15th February 1799, a judge of elections had no right to exact an oath from an elector, that he did not join the British forces, during the revolutionary war, or was not attainted of high treason.

A threat to the judge, made by the son of the elector, under such circumstances, is not an indictable offence ; to constitute the offence of intimidation, there must be a preconceived intent to intimidate the officers, or to interrupt the election.

THIS was an indictment, on the 17th section of the election law (4 Dall. Laws, 342), which provides (among other things) that " if any officer of the election shall be threatened, or violence used to his person, or interrupted in the execution of his duty, every person who shall be guilty of such intimidation, threats, violence or interruption, being convicted thereof, shall be fined and imprisoned for the same, at the discretion of the court, not exceeding six months imprisonment, nor exceeding one hundred dollars fine."

The facts were briefly these : Mr. Beckley, the prosecutor, was appointed a judge, at the general election in October 1801. Mr. Gibbs, the father of the defendant, presented his ballot, but before accepting it, Mr. Beckley insisted, that he should answer the following questions : 1st. Did you, at any time during the *American war, join the British army ? 2d. Or, take *254] an oath of allegiance to the king of Great Britain ? 3d. Or, were you attainted of treason against the United States, or the state of Pennsylvania ? Mr. Gibbs declined answering the questions ; and (after some altercation) his son, the defendant, shaking his fist at Beckley, said, " I will see you tomorrow."

Two grounds of defence were taken by *Ingersoll* and *Lewis :* 1st. That the judge of the election was not in the performance of a duty, when he proposed such questions to an elector. The act of assembly declares who may vote ; and as to the enumerated requisites to constitute a right of voting, the voter's oath or affirmation may be demanded. After the repeal of the test laws, every citizen who had not been attainted, had a right to vote. But the questions are not pointed to the qualification designated i: the act ; the answers to those questions might tend to criminate the voter

---

[1] s. c. 3 Yeates 429.

Commonwealth v. Franklin.

himself; for, it attainted, he would still be liable (notwithstanding the treaty of peace) to the corruption of blood, under the old state constitution, the treaty of peace not operating as a reversal of the attainder; and no lawyer ever suggested, or would assert, that a man's vote could be rejected, unless he answered questions thus tending to the exposition of his own guilt. 1 Styl. Pr. Rep. 675; 3 Bl. Com. 268, 363–4; Doug. 572; Salk. 153; 4 State Trials, 747.   2d. That it is material, on the present indictment, to prove that the defendant acted with design to influence unduly, or to over-awe the election, or to restrain the freedom of choice : whereas, it is evidently the case of a son interposing, to protect an aged and infirm parent from insult ; and his actions, as well as words, were the mere ebullition of sudden passion.

*Reed* and *Dickerson*, for the commonwealth, admitted that no answer could be exacted, which would expose a man to penal consequences; but they insisted, that the answers to the questions proposed (though in the affirmative) would not, at this day, involve the voter in any jeopardy of life, liberty, property or penalty.   The answers could only prove him (if in the affirmative) to be an alien ; and an alien may certainly be compelled to disclose his foreign birth.   (Park. 164.)   The questions were calculated to ascertain a fact, on which the right to vote depended.   None but citizens can vote.   Now, although every man (even a native of America) had a right to choose his party in the revolutionary war (1 Dall. 53), yet, if he took an oath of allegiance to Great Britain, or joined her armies, he determined his election ; and in neither of these cases, any more than in the case of an attainder, could he vote at our elections, as a qualified citizen.   If, then, the judges of the election acted within the limits of an official discretion, in proposing the questions, the *lifted fist and threatening words of the de-  [*255 fendant, bring the case clearly within the description and punishment of the law.

THE COURT delivered a full and decided opinion, in the charge to the jury, that the questions, proposed by the judges of the election, were illegal ; that Mr. Beckley could not, therefore, be considered in the execution of his duty, when he insisted upon an answer to those questions ; and that, consequently, the defendant was not liable to an indictment, under the election law (however he might otherwise be charged), for resisting, in the way that he did, the demand upon his father, to answer questions tending to criminate himself.

Verdict, not guilty.